UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADT LLC, and ADT US HOLDINGS, INC.,<br><br>               Plaintiffs,<br><br>     vs.<br><br>PROTECTION ONE, INC. and<br>PROTECTION ONE ALARM MONITORING,<br>INC.,<br><br>               Defendants. | Case No.  15-cv-7166<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' COMPLAINT

Plaintiffs ADT LLC and ADT US Holdings, Inc. (collectively, "ADT" or "Plaintiffs"), by and through counsel, for its claims and causes of action against Defendants Protection One, Inc. and Protection One Alarm Monitoring, Inc. (collectively, "Protection One" or "Defendants") and in support allege:

### I.  PARTIES

1.      Plaintiff ADT US Holdings, Inc. is a Delaware corporation with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.   ADT US Holdings is a holding company that owns, *inter alia*, the ADT trademarks, including without limitations 21 ADT live word trademarks featuring the letters "A – D – T," registered in the United States Patent & Trademark Office that bear the registration numbers 3251836, 3352491, 710708, 710507, 3515266, 3515266, 3511263, 3445423, 3909665, 3485321, 3421797, 1034716, 838956, 803247, 846966, 3348663, 3253804, 3445420, 3991449, 3335239, 3335298, and 3427081 ("ADT Trademarks").

2.      Plaintiff ADT LLC is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.  ADT LLC is an operating

company that runs the ADT alarm services business in the United States. ADT LLC uses the ADT Trademarks under licenses from ADT US Holdings.

3.     ADT was separated from its former parent, Tyco International, effective October 1, 2012 through a restructuring that made ADT a publicly-owned company traded on the New York Stock Exchange. ADT succeeds to all rights and property of the former ADT business, including all causes of action accruing to ADT prior to October 2012, and all rights to the ADT Trademarks and other ADT intellectual property.

4.     Defendant Protection One, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 1267 Windham Parkway, Romeoville, Illinois, 60446. Protection One's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

5.     Defendant Protection One Alarm Monitoring, Inc. is a corporation organized under the laws of Delaware with its principal place of business located 1035 N. 3rd St., Ste 101, Lawrence, KS 66044. Protection One's registered agent for service of process is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. Protection One Alarm Monitoring, Inc. is a subsidiary of Protection One, Inc.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents a federal question under §43 of the Lanham Act.

7.     This Court has supplemental jurisdiction over the state law claims also asserted in this action pursuant to 28 U.S.C. §1367(a).

8.     Venue is proper in this District pursuant 28 U.S.C. §1391(b) because both Protection One, Inc. and Protection One Alarm Monitoring, Inc. reside in this District.

Protection One, Inc. maintains its principal place of business in this District, and Protection One Alarm Monitoring, Inc. maintains an office in this District. Also, both Protection One, Inc. and Protection One Alarm Monitoring, Inc. do business in this District.

## FACTS COMMON TO ALL COUNTS

9.      ADT, founded in 1874, is the oldest, largest and best-known provider of electronic security services.  ADT provides electronic security services to residences and businesses in over 200 major markets nationwide.

10.      ADT's name and Trademarks are registered with the United States Patent and Trademark Office.

11.      Protection One is in the business of selling alarm equipment, installing alarm equipment and providing alarm monitoring services for customers.  Protection One's sales agents sell and install security systems.  The buyers sign contracts with Protection One to monitor these systems and provide other security-related services.  The customers pay Protection One monthly fees for these services.

12.      Protection One is a direct competitor of ADT.  Both sell similar alarm systems and alarm monitoring services to the same target group of residential customers.  Neither ADT nor Protection One makes alarm equipment. Both buy alarm panels and sensors from the same few companies, such as GE Security and Honeywell, to install in customers' homes.  ADT operates in each of the states in which Protection One markets and sells security equipment and monitoring services.

13.      Upon information and belief, Protection One is using the ADT trade name to take over ADT alarm accounts.

14.     Upon information and belief, representatives of Protection One have made false and misleading statements to ADT customers that they were representatives of, employed by, or otherwise directly associated with ADT or the manufacturer of the customers' alarm systems being monitored by ADT.  These and other false and misleading statements by Protection One caused ADT customers to believe they were talking with representatives of ADT or the maker of the customers' ADT alarm equipment.

15.     One false pitch used by Protection One, as described in detail below, involved representatives of Protection One going to ADT customers' homes representing that they were with ADT and offering to provide the customer with an "upgrade" of the customer's security equipment.  The false and misleading statements by sales representatives of Protection One led the ADT customers to believe that they were speaking with people affiliated with ADT and were being offered an upgrade as part of an ADT program.

16.     Instead of installing an ADT upgrade, however, Protection One was causing ADT customers to terminate their existing valid customer agreements with ADT and then executing new customer contracts with Protection One.

17.     Another type of deceptive sales and trade practice Protection One used, as described in detail below, involved representatives of Protection One making false and misleading statements to ADT customers regarding ADT's business and monitoring services. These false and misleading statements include but are not limited to statements that ADT was "going out of business," or Protection One was "taking over" ADT accounts in a particular area, or the ADT customer's security system was outdated.

4

18.     Protection One's false sales pitches are injuring ADT customers by confusing them as to Protection One's affiliation.  They are causing ADT customers to terminate their existing contracts with ADT and enter into new customer contracts with Protection One.

19.     Protection One's false representations to ADT customers regarding ADT's business and monitoring services damage ADT's goodwill and reputation as a reliable provider of security services.

20.     As a result of Protection One's practices, a number of ADT customers have unwittingly found themselves with security systems installed in their homes by Protection One, and with contractual obligations to both ADT and Protection One.  In some instances, ADT has been required to send technicians to the deceived customers' homes to reinstall the removed ADT equipment, at considerable expense to ADT.  In other situations, the customers retained their systems with Protection One and terminated their contracts with ADT.

21.     Such practices, as alleged in greater detail below, violate statutory and common-law prohibitions against the use of false and deceptive statements in commerce. They also violate the security systems industry's own Code of Ethics and Standards of Conduct, which requires that companies "truthfully and clearly identify themselves by name ... at the initiation of a sales presentation, without request from the consumer," and which prohibits as common deceptive sales practices, *inter alia*, (a) any claim that competitor is going out of business, (b) any claim that the company is taking over the competitor's accounts, or (c) any offer of an "update" or "upgrade" of an existing system that requires the execution of a contract with a new security services provider.

## **Protection One's Relationship with Pinnacle Security**

22.     Pinnacle Security, LLC ("Pinnacle") was an alarm company dealer that installed alarm systems and entered into alarm monitoring contracts with customers until January 2013 when the company dissolved.

23.     Pinnacle generated most of its sales by recruiting employees to go door-to-door throughout neighborhoods across the US, primarily during the summer months.

24.     The founders of Pinnacle, Jared Chappell ("Chappell") and Steve Zolman ("Zolman"), managed its door-to-door sales program.

25.     Pinnacle's door-to-door sales program has been the subject of numerous government enforcement actions, largely involving deceptive sales practices.

26.     For instance, in October 2009, the Illinois Attorney General filed a lawsuit against Pinnacle, alleging that its door-to-door sales force targeted customers of other, rival home security services and used misleading statements to convince customers that Pinnacle was affiliated with competitors, such as ADT, or that ADT had gone bankrupt and that Pinnacle would be servicing ADT customers as a result. Pinnacle entered into a consent decree in 2010, barring Pinnacle from "misrepresenting any material terms and conditions of its services, including, but not limited to, the price of its services or its affiliation with other home security companies."

27.     In 2010, the Ohio Attorney General sued Pinnacle Security, alleging that Pinnacle violated Ohio consumer law by installing security systems in Ohioans' homes based on misrepresentations, among other violations.  Pinnacle settled the lawsuit in 2011 agreeing to change its business practices and to pay $75,000 in restitution to 169 Ohio consumers.

28.     Also in 2010, the Florida Attorney General initiated an investigation into Pinnacle's door-to-door sales practices after receiving over 330 customer complaints primarily made by senior citizens. The customer complaints involved Pinnacle's false representations that the company represented other security operations or that those companies were being taken over by Pinnacle.  Pinnacle settled with the Florida Attorney General in 2012 by an assurance of voluntary compliance, agreeing to pay restitution to the customers that were deceived and to reform its business practices.  The assurance of voluntary compliance was executed by Chappell on behalf of Pinnacle.

29.     Pinnacle also settled a lawsuit filed by the New York Attorney General in 2010, agreeing to pay a $150,000 penalty and to reform its business practices.  The New York Attorney General's investigation of Pinnacle's business practices revealed that Pinnacle's door-to-door sales staff often targeted homeowners who had existing contracts with other security companies. Pinnacle sales staff then made false representations to convince people to sign up for Pinnacle products even though the consumer had a contract with another home security company. Pinnacle misled homeowners into believing that their existing home security provider had gone out of business, had merged with Pinnacle, or was in some way already affiliated with Pinnacle. Unsuspecting homeowners signed up for a contract with Pinnacle when they were still bound by their prior home security contract.

30.     In 2011, the Missouri Attorney General filed a lawsuit against Pinnacle, claiming that the company was engaging in unethical business practices.  Specifically, the complaint alleged that Pinnacle salespeople told Missouri residents that Pinnacle acquired the homeowners' existing alarm company or that the company went bankrupt. Those clients were given a prepared contract supposedly authorizing security upgrades. Instead, the contract permitted installation of

Pinnacle products, leaving patrons with two security bills, according to the complaint. The case was settled in 2012. Pinnacle agreed to pay $76,000, with $46,000 going to customers who were deceived.

31.     In 2012, the Wisconsin Attorney General filed a lawsuit against Pinnacle for its deceptive sales practices. Like the other government enforcement actions, the complaint alleged that Pinnacle induced customers to contract with Pinnacle by representing that the customer's existing monitoring company had a business relationship with Pinnacle, or that Pinnacle had taken over for the customers' existing home-security companies that had gone bankrupt. The case was settled in 2012 by consent judgment.

32.     Pinnacle also entered into a consent decree with the Wisconsin Attorney General's Office in 2012. Pinnacle agreed to end its use of false sales pitches and pay $55,000 in penalties. Chappell signed the consent decree on behalf of Pinnacle.

33.     Pinnacle was even banned from making new sales to Illinois customers for two years in 2012.

34.     Upon information and belief, Pinnacle effectively shut down operations in January 2013 after eight lawsuits from attorney general offices across the country.

35.     In February 2013, Protection One announced its launch of a new door-to-door residential sales initiative to convince more people to purchase Protection One systems and monitoring services.

36.     Protection One also announced that Messrs. Chappell and Zolman, Pinnacle's founders, would be joining the Protection One management team and leading the new residential division at Protection One – despite Pinnacle's long history of government investigations for deceptive sales practices.

8

37.     In fact, just one week after Protection One made the announcement, Pinnacle settled a civil lawsuit filed by the Contra Costa County District Attorney's office for $525,000 for unethical business practices.  Again, as part of the settlement, Pinnacle agreed to refrain from making false and misleading statements during door-to-door sales presentations and to immediately identify themselves and their company.

38.     Upon information and belief, Protection One, through the management of Messrs. Zolman and Chappell, has employed the same types of deceptive sales practices that were subject to the government enforcement actions of Pinnacle. Upon information and belief, Protection One also hired many sales representatives that formerly worked for Pinnacle.

39.     ADT began to receive customer complaints involving Protection One in 2013 following the arrival of Messrs. Zolman and Chappell at Protection One.  As described in detail below, Protection One sales agents have made false or deceptive representations to ADT customers in order to induce the customers to execute contracts with Protection One.

**Protection One Wrongfully Induces ADT Customers to Change Service**

40.     From 2013 to the present, ADT has received 323 complaints from customers who have encountered Protection One's deceptive trade practices.  The rate of these complaints has increased, with most occurring in 2015.  Some of these complaints are described below.

41.     For example, in May 2013, ADT customer M.S.[1] in Rochester, New York, reported to ADT that a Protection One representative named Cameron went to the customer's home and told the customer that the customer's equipment needed to be upgraded.  Believing Cameron was an ADT representative, the customer let Cameron into her home.

---

[1]  Exhibit A hereto, which is filed under seal in order to protect against disclosure of confidential ADT customer information, sets forth identifying information regarding the ADT customers described herein.

9

42. In March 2014, ADT customer L.P. in Altoona, Alabama, reported to ADT that a Protection One representative, Eric Nabor, who was a former ADT employee, used his ADT business card to solicit the ADT customer and to attempt to have the customer switch to Protection One.

43. In May 2014, ADT customer D.T. in Independence, Missouri, reported to ADT that a Protection One representative came to the customer's home at night. The representative stated that he was "doing business for ADT" and updating all systems. The representative convinced the customer to have a new system installed that night because the customer believed the representative was with ADT.

44. In June 2014, ADT customer T.K. in Granite City, Illinois, reported to ADT that a Protection One representative named Joshua Adam came to the customer's home late at night stating that he was with a company that ADT had hired to monitor alarms in the customer's area, and that he was visiting to "upgrade" her alarm system. The customer reported to ADT that the representative had specific information about her account, such as the date of installation and where all the sensors were located in her house.

45. Also in June 2014, ADT customer F.C. in Lincoln Park, Michigan, reported to ADT that a Protection One representative came to the customer's door and stated that the representative "had been hired by ADT" to "upgrade" customers' systems to "digital." The representative had installers waiting in a truck parked outside the customer's house and pressured the customer to have the new equipment installed immediately. The customer acquiesced and executed a contract with Protection One.

46. In December 2014, 82-year-old ADT customer John Agnew in Fort Myers, Florida, reported to ADT that a man wearing a shirt with a Protection One logo came to the

customer's door and introduced himself as "Miguel." Miguel told Mr. Agnew that he was at the customer's door to "upgrade your security hardware," that his company manufactures the security hardware, and that ADT does the monitoring. Mr. Agnew asked Miguel if his bill will be coming from the same place, and Miguel responded, "yes." Miguel had Mr. Agnew execute a new contract, and a technician installed the new equipment later that day.

47. In January 2015, ADT customer B.I. in Spring, Texas, reported to ADT that a man wearing a Protection One badge came to the customer's house and told the customer that ADT contracted with his company to do some work for ADT. He stated that an upgrade was required if her keypad was older than three years.

48. In February 2015, 69-year-old ADT customer Lorraine Baca in Sun City, California, reported to ADT that a man from Protection One by the name of Andre Castro came to her house and introduced himself as "with ADT." Mr. Castro told Ms. Baca that he was at her home to review the customer's contract with ADT. Based on Mr. Castro's misrepresentations, Ms. Baca signed a contract with Protection One. Ms. Baca noticed that the contract had a Protection One logo after Mr. Castro left her house, and Ms. Baca called ADT to determine whether Protection One was affiliated with ADT. After the ADT operator confirmed that Protection One is not affiliated with ADT, Ms. Baca called Mr. Castro to cancel the contract with Protection One.

49. In April 2015, 87-year-old ADT customer Jewel Boyles in North Augusta, South Carolina, reported to ADT that a man came to the customer's door stating that he was "with ADT" and there to "upgrade" the customer's equipment. The customer allowed the representative into her home and signed a Protection One contract that he presented. The following day, Protection One technicians installed the new equipment in the customer's home.

After the installation, the customer called ADT and learned that Protection One is not affiliated with ADT. The customer cancelled the new contract and made arrangements for ADT to reinstall its equipment in her home.

50. Representatives of Protection One also made false and misleading representations about ADT's business and its monitoring services for alarm accounts.

51. For example, in February 2013, ADT customer H.M. in Beaumont, Texas, reported to ADT that a representative from Protection One came to the customer's door. The representative stated that the customer did not have an alarm account and that he would like to give the customer security. Believing him, the customer signed a new Protection One contract. The customer ended up getting bills from both ADT and Protection One for monitoring services.

52. In June 2013, ADT customer B.W. in Greensboro, North Carolina, reported to ADT that a Protection One representative came to her home and told her that Protection One had "bought out" ADT. The customer signed a new Protection One contract based on the representative's false statement.

53. In July 2014, ADT customer D.G. in Houston, Texas, reported that a Protection One representative told the customer that Protection One was "taking over" ADT contracts because ADT was going out of business. The representative also told the customer that he needed to "upgrade" the customer's equipment. When the customer asked if ADT was aware of this, the representative confirmed that ADT was aware.

54. In August 2014, ADT customer M.S. in Englewood, Colorado, reported to ADT that a Protection One representative came to the customer's house and told the customer that ADT was "bought out" by Protection One because there were "a lot of lawsuits pending against ADT." The representative told the customer that he was there to "upgrade" the customer's

system and that if the customer signed up, a technician could upgrade her system before ADT goes completely out of business.

55.     In November 2014, ADT customer N.N. in Westminster, California, reported that a Protection One representative visited her house, stating that Protection One had taken over ADT and that he was visiting to "upgrade" her system.  The representative had the customer sign a contract with Protection One and removed her ADT equipment.

56.     Protection One's false and misleading statements and misuse of ADT's trade name had a material effect on ADT customers' purchasing decisions, interfered with ADT's contractual relationships with its customers, deceived or had the capacity to deceive customers, induced ADT customers to break their contracts and enter into new customer contracts with Protection One, and have caused and continue to cause injury to ADT.

57.     Upon information and belief, Protection One continues to make false and misleading statements, including misuse of the ADT trademark, to solicit ADT customers, to induce them to breach or otherwise terminate their agreements with ADT, and to enter into new customer contracts with Protection One, a competitor of ADT.

58.     As a direct and proximate result of Protection One's actions, ADT has suffered and will continue to suffer irreparable harm and injury, including but not limited to loss of customers, reputation and goodwill, and has also suffered and will continue to suffer economic damages caused by these actions.

59.     Not all of the customers affected by Protection One's use of false sales pitches report misconduct to ADT.  As a result, the complaints ADT has received are likely a small fraction of the total number of customers to whom Protection One, by its agents, marketed alarm systems and monitoring services using false pitches.

60.     Protection One's use of these pitches, with the likely confusion they cause customers as to the affiliation of Protection One's services with ADT, has confused the market for ADT's services, has capitalized on ADT's goodwill among consumers, has preyed on consumers' trust in ADT, and has allowed Protection One to acquire customers who believed they were dealing with ADT.

61.     Protection One's false sales pitches have injured ADT's reputation and relationship with its customers.

**COUNT I**
**UNFAIR COMPETITION IN VIOLATION**
**OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

62.     Plaintiffs incorporate Paragraphs 1 through 61, as if set forth fully here

63.     ADT US Holdings owns the ADT Trademarks. ADT LLC uses the ADT Trademarks under license from ADT US Holdings. Both are injured by any infringement of the ADT Trademarks.

64.     Defendants' sales agents represent themselves to ADT customers as technicians or agents of ADT, or of companies affiliated with ADT, visiting the customers to provide an "upgrade" of the customers' ADT alarm systems.   Defendants' sales agents use other false sales pitches that mislead ADT customers as to their true affiliation.

65.     In fact, Defendants' sales agents do not represent ADT or any company affiliated with ADT.  They use these false sales pitches to sell alarm systems to ADT customers without the customers' knowledge.

66.     These false sales pitches are likely to confuse consumers regarding Defendants' affiliation with ADT.  Defendants already have created confusion among consumers, and will continue to do so if permitted to continue.

14

67. Each of the Defendants has used these false sales pitches to sell alarm systems to ADT customers.

68. ADT has been and will continue to be damaged as a result of Defendants' false statements, by the confusion of the market for ADT's goods and services, by the disruption of ADT's relationships with its customers, by the diversion of ADT's customers to defendants, and by damage to ADT's goodwill and reputation as a reliable provider of security systems.

69. ADT is entitled to an injunction pursuant to 15 U.S.C. § 1116(a) barring defendants from further violations of 15 U.S.C. § 1125(a). Defendants are likely to continue to engage in such practices unless they are enjoined by this Court from further violations.

70. ADT is entitled to an award of compensatory damages, as well as Defendants' profits, and attorney fees and the costs of this action pursuant to 15 U.S.C. § 1117(a). The Court, pursuant the discretion confided to it under this section of the Lanham Act, should consider trebling these damages to compensate ADT fully for its losses.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

a. An order pursuant to 15 U.S.C. § 1116(a) restraining and enjoining Defendants and their respective agents, servants, independent contractors, subsidiaries, affiliates, employees, officers, attorneys, successors and assigns, from falsely stating or representing, or training sales agents to state or represent, that:

1) their agents are visiting from "the alarm company" or "the security company" without also specifying defendants' name in the same sentence;

2) ADT is going out of business or is in financial difficulty;

3) ADT does not exist;

15

4) ADT is changing or has changed its company name;

5) Defendants have acquired, have merged with, have been taken over by, or are part of ADT;

6) Defendants are acting on behalf of, or are otherwise acting with the consent or approval of ADT;

7) Defendants are the "sister" companies of ADT or in any other way affiliated with ADT;

8) Defendants manufacture the equipment used by ADT, or that defendants represent or are visiting on behalf of an alarm equipment manufacturer, including but not limited to General Electric and Honeywell;

9) Defendants are performing routine maintenance on the customer's ADT's equipment;

10) any change proposed during a sales solicitation is an "update" or "upgrade" of the consumer's existing alarm system or alarm monitoring service agreement with ADT;

11) an ADT customer's ADT security system is outdated or deficient;

12) any enjoined party is "taking over' the monitoring of an ADT account or has purchased an ADT account from ADT;

13) ADT is not, or has stopped, monitoring the alarm system for that person, residence, or business;

14) ADT will no longer be able to monitor or service the alarm system for that person, residence, or business;

15) any enjoined party is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior approval of such governmental or law enforcement agency;

16) statistics or other information is accurate which is known to be false or misleading, and which defendants have not made a reasonable effort to objectively quantify or substantiate; or

17) any other false or misleading representation to current or former customers of ADT in the marketing or sale of an alarm system that defendants' sales agent knows to be false when made.

b.   Compensatory damages, in an amount to be found by the jury at trial of this cause, but believed to be no less than $7,000,000;

c.   An award of defendants' profits resulting from their deceptive practices to ADT;

d.   Attorney fees and costs incurred in the prosecution of this action, as provided by 15 U.S.C. § 1117(a); and

e.   Such other and further relief as the Court may deem appropriate.

**COUNT II**
**UNFAIR COMPETITION IN VIOLATION OF COMMON LAW**

71.    Plaintiffs incorporate Paragraphs 1 through 70, as if set forth fully here

72.    ADT and Defendants compete for a common pool of customers. ADT and Defendants market alarm services to the same target market of residential customers.

73.    Defendants have engaged in deceptive and fraudulent misconduct by using false sales pitches that are designed to mislead and confuse customers as to Defendants' affiliation, and as to the source of their services.

17

74.     Defendants' use of false sales pitches has also caused ADT customers to cancel their ADT alarm services based on false pretenses.

75.     Defendants are competing unfairly with ADT.  By their use of false sales pitches, Defendants are misleading ADT's customers to accept what they believe to be an "upgrade" of their existing ADT alarm services.  In fact, Defendants are visiting ADT's customers to sell and install a competing non-ADT alarm system.

76.     Defendants' conduct as set forth above is contrary to honest practice in industrial or commercial matters.  Among other things, Defendants' actions misappropriate the labors and expenditures of ADT and permit Defendants to reap benefits ADT has sown.

77.     Defendants' actions are likely to cause confusion among consumers, and have already caused confusion.  Their actions are likely to lead the public to believe Defendants are in some way connected with ADT.

78.     ADT has been injured as a result of Defendants' actions.

79.     ADT is entitled to an award of compensatory and punitive damages, and attorney fees and the costs of this action pursuant to common law.

80.     The Court should also award punitive in an amount sufficient to deter Defendants from continuing to engage in unfair competition in the market for electronic security services.

WHEREFORE, ADT respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

a.     Compensatory damages, in an amount to be found by the jury at trial of this cause, but believed to be no less than $7,000,000;

b.     Punitive damages in a sum sufficient to deter defendants from engaging further in such sales practices; and

18

c. Such other and further relief as the Court may deem appropriate in the circumstances.

Dated: August 14, 2015

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: _____ /s/ George R. Dougherty _____
George R. Dougherty
Riley C. Mendoza
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
gdougherty@shb.com
rmendoza@shb.com
Firm No. 58950

*Attorneys for Plaintiff*